**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 2:15–cr–80–JCM–VCF |
| vs. | **REPORT & RECOMMENDATION** |
| GREGORY ALLEN WATERS, II, | MOTION TO SUPPRESS (#18) |
| Defendant. | |

This matter involves the United States prosecution of Gregory Allen Waters, II for being a felon in possession of a firearm. *See* (Indict. #1[1]). Before the court is Mr. Waters' Motion to Suppress (#18). The government opposed (#22) and Mr. Waters replied (#23). For the reasons stated below, Mr. Waters' motion should be denied.

## I. BACKGROUND

In September of 2014, Gregory Waters was confronted by an unidentified man while standing in his front yard. The pair "had some words" and Mr. Waters retreated into his home. He and his friends congregated in the kitchen, which was visible from the front yard. Gunshots were fired into the house. One guest was killed. Mr. Waters was severally injured and hospitalized. When Mr. Waters was released from the hospital, he and his longtime girlfriend, Kiya Green, went to Los Angeles.

Mr. Waters and Ms. Green missed their family and friends in Las Vegas. In early December, they returned home for a visit. On December 8, the pair picked up breakfast at McDonalds and prepared to

---

[1] Parenthetical citations refer to the court's docket.

drive back to Los Angeles. Mr. Waters departed McDonalds, pulled onto North Lamb Boulevard, and waited at the intersection with East Charleston Boulevard for a green light. It was 7:45 a.m.

Officer Kristy McConnell sat in her patrol car nearby. She saw Mr. Waters' waiting at the stoplight, ran the registration, and discovered that it had been suspended because the vehicle's insurance had lapsed. Officer McConnell activated her lights and siren. Mr. Waters drove through the intersection and led McConnell to believe that Mr. Waters was attempting to flee. Mr. Waters drive south on North Lamb Boulevard for approximately five hundred feet before pulling into a Home Depot parking lot.

Mr. Waters immediately called for backup. Officers Rundell and Munguia arrived four minutes later. Rundell and Munguia's patrol car blocked Mr. Waters' car from the front while McConnell's patrol car blocked it from the back.

McConnell ran Mr. Waters' license plate through the Las Vegas Metropolitan Police Department's database, exited her patrol car with her weapon drawn, and walked up to the driver-side window. Mr. Waters was shaking, marijuana emanated from the car, and both occupants "were acting in a very suspicious manner."

McConnell returned to her patrol car and read Metro's report on Mr. Waters' car. The report stated that Mr. Waters' red Nissan 200sx coupe was a "felony vehicle" and that its occupants were armed and dangerous and wanted in connection with an attempted murder. McConnell requested additional backup for safety reasons and a K9 unit to investigate the marijuana.

When backup arrived, Mr. Waters and Ms. Green were taken into custody. Mr. Waters was handcuffed and placed against one patrol car. Green was handcuffed and placed against the other. Mr. Waters asked what was happening. McConnell said that they "were waiting on detectives" because there are "some people that want to talk to you." Mr. Waters inquired why. McConnell answered, "[you] would know better than me."

The detectives arrived approximately an hour later. Meanwhile, a background check had revealed that Mr. Waters was convicted on various felony charges in 2000, 2003, and 2007. Mr. Waters was taken into one detective's car for questioning. The red Nissan's contents were spread out on the parking lot and a dog was searching inside the car. Mr. Waters was taken into another car for additional questioning. A gun had been found in a bag under the Nissan's hood while Mr. Waters was in the first detective's car. The second detective asked Mr. Waters questions about it.

At some point during his interview with the two detectives, Mr. Waters was formally arrested and read his *Miranda* rights. When asked about the gun, Mr. Waters incriminated himself and said that he possessed it for "protection." Mr. Waters was subsequently booked in the Clark County Detention Center.

On March 18, 2015, Mr. Waters was indicted for being a felon in possession of a firearm. Now, he moves to suppress all evidence seized during the traffic stop. He argues that Officer McCullen's stated reason for stopping Mr. Waters was pretextual and the stop was unlawfully expanded beyond its initial purpose.

## II. LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The general rule is that the Fourth Amendment makes warrantless searches and seizures unreasonable as a matter of law. *See United States v. Cervantes*, 703 F.3d 1135–1138–39 (9th Cir. 2012) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Traffic stops provide one of the "few specifically established and well-delineated exceptions" to this rule. *Id.*

A police officer may stop a car without a warrant, and thereby seize its passengers, if there is reasonable suspicion that criminal activity may be afoot or probable cause that a traffic violation has

3

occurred. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (stating that a police officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver). Reasonable suspicion is a low standard; it only requires a police officer to "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). A police officer's "actual motivation" or "[s]ubjective intentions" are not germane to the constitutionality of a stop. *Whren*, 517 U.S. at 813–14.

A police officer may also search a car without a warrant if there is probable cause that the car contains contraband or other evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 153–54 (1925). The warrantless search is limited in scope to compartments and containers in the car that may hold the suspected contraband or evidence. *United States v. Ross*, 456 U.S. 798, 820–21 (1982). The rationale for this rule is twofold: automobiles can be driven away before a warrant may be obtained and their occupants have a reduced expectation of privacy when traveling openly in public view. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (tracing the history of the automobile exception).

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is "a fluid concept." *Id*. at 232. It is "not readily, or even usefully, reduced to a neat set of legal rules." *Id*. Determining whether probable cause exists "turn[s] on the assessment of probabilities in particular factual contexts." *Id*. The concept does not deal with hard certainties, but with probabilities. *Id*. at 241. This means that a police officer's reasonable but mistaken belief regarding the facts establishing probable cause does not offend the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

If a police officer stops a vehicle without reasonable suspicion or searches it without probable cause, then the occupant's Fourth Amendment rights have been violated, *see Florida v. Royer*, 460 U.S.

491, 497–99 (1983), and the exclusionary rule bars the prosecution from introducing evidence against that person that was obtained as a result of the illegal seizure. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *Spano v. New York*, 360 U.S. 315, 320–21 (1959). ("[T]he police must obey the law while enforcing the law; [] in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.").

### III. DISCUSSION

Mr. Water's Motion to Suppress should be denied. He first contends that Officer McConnell's stop was unconstitutional because it was pretexual: "if [Mr. Waters] was white," Officer McConnell would not have stopped the vehicle. (Doc. #18 at 6:25–26). Mr. Waters also argues that the stop was pretextual because the police wanted to interview Mr. Waters in connection with an attempted murder investigation. These arguments are factually and legally unfounded.

There is no dispute that Officer McConnell stopped Mr. Waters because his vehicle's registration was suspended. Police reports by Officer McConnell and Detective Poulsen state that the stop occurred because "the vehicle registration was suspended." (Doc. #18-1 at 7); (Doc. #18-1 at 5) "[P]atrol had the suspect Waters, Gregory stopped for a suspended registration."). Mr. Waters fails to allege any facts to rebut these reports. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist.").

Mr. Waters' argument is also legally unsound. A police officer may execute a stop for pretextual reasons provided there is also an objective basis for the stop. *Whren*, 517 U.S. at 809–10; *United States v. Huguenin*, 154 F.3d 547, 557 (6th Cir. 1998) ("The Supreme Court in *Whren*, thus, made clear that

pretext (the subjective motive for stopping a vehicle) is irrelevant when probable cause exists."). An objective reason existed here: Mr. Waters' vehicle registration was suspended.

Next, relying on *Rodriguez v. United States*, 135 S. Ct. 1609 (2015), Mr. Waters argues that the police unconstitutionally expanded the scope of the search beyond the permissible scope of a traffic stop. *Rodriguez* is factually distinguishable. In *Rodriguez*, a police officer conducted a routine traffic stop and conducted a dog-sniff search of the vehicle without additional reasonable suspicion to search the car. *Id*. at 1613. The Supreme Court held that this was unconstitutional because a dog-sniff search is not an ordinary incident of a traffic stop. *Id*. at 1615 ("Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission.").

Like *Rodriguez*, Officer McConnell conducted a routine traffic stop and a dog-sniff search of the Defendant's car. Unlike *Rodriguez*, the police had grounds to expand the scope of the search. Officer McConnell received a police report stating that Mr. Waters' red Nissan 200sx coupe was a "felony vehicle" and that its occupants were armed and dangerous and wanted in connection with an attempted murder. No similar facts were present in *Rodriguez*.

The presence of these facts renders the officers' conduct reasonable under the Fourth Amendment. A police officer must have reasonable suspicion or probable cause to execute a traffic stop and an independent basis of reasonable suspicion or probable cause to prolong the stop beyond its initial purpose. *United States v. Turvin*, 517 F.3d 1097, 1100 (9th Cir. 2008) (citing *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007)). Here, Mr. Waters was stopped for a routine traffic violation. When the stop was underway, Officer McConnell discovered that the car had been involved in an attempted murder and that its occupants may be armed. Officer McConnell also observed the smell of marijuana. These additional facts gave Officer McConnell reasonable suspicion and probable cause to seize the occupants for questioning and search the vehicle for contraband related to (1) the attempted murder investigation

and (2) drug use. *See United States v. Parker*, 919 F. Supp. 2d 1072, 1079 (E.D. Cal. 2013) ("The odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a warrantless search of the vehicle."); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (holding that alcohol odor provided probable cause to search vehicle for open container and smell of burnt marijuana justified search of entire vehicle for drugs); *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir.1986) (noting that odor of marijuana provides probable cause to search vehicle at least until likely source of odor is found).

In reply, Mr. Waters argues that the government should be compelled to provide Mr. Waters with additional information to substantiate the government's version of the facts. The court finds that government's facts are sufficiently substantiated by Officer McConnell and Detective Poulsen's police reports. Mr. Waters failed to allege any sufficient facts to rebut these reports or require an evidentiary hearing. *Walczak*, 783 F.2d at 857. If Mr. Waters requires additional information for trial, he may file a motion to compel if appropriate under the Federal Rules of Criminal Procedure and the Order Regarding Pretrial Procedure (#9) in this matter.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Mr. Waters' Motion to Suppress (#18) be DENIED.

IT IS SO RECOMMENDED.

DATED this 29th day of June, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE