UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>GREGORY ALLEN WATERS, II,<br><br>Defendant(s). | Case No. 2:15-CR-80 JCM (VCF)<br><br>ORDER |

Presently before the court is Magistrate Judge Ferenbach's report and recommendation (doc. # 24) on defendant Gregory Allen Waters' motion to suppress. (Doc. #18). Defendant filed an objection (doc. #25), and the government filed a reply to defendant's objection. (Doc. #28). Also before the court is defendant's motion for a *de novo* hearing before the district judge. (Doc. #39). The government filed a response. (Doc. #40).

**I.     Background**

In September 2014, the defendant, Gregory Waters, and his guests were victims of a shooting while in his home. One guest was killed and defendant was severely injured and hospitalized. After he was released from the hospital, defendant and his longtime girlfriend, Kiya Green, moved to Los Angeles. (Doc. #24). Soon after, defendant and his girlfriend visited their family and friends in Las Vegas. On December 8, 2014, the pair decided to return home to Los Angeles. While waiting at a stoplight at the intersection of Lamb and East Charleston Boulevard, their car was clearly visible to a marked patrol unit captained by Officer Kristy D. McConnell, (P#13336). (*Id.*) The registration on Mr. Water's vehicle was suspended due to a lapse in his car insurance. (*Id.*) Officer McConnell initiated a traffic stop at 7:46 A.M. and defendant pulled into a nearby Home Depot parking lot. (Doc. #18).

**James C. Mahan**
**U.S. District Judge**

The sequence of events that occurred once Officer McConnell pulled over the defendant is in dispute. Officer McConnell's report states that she conducted the vehicle stop, interacted briefly with the defendant and Ms. Green." returned to her patrol car where she read the returns from a scope hit which indicated that this was a felony vehicle and that the occupants may be, as she described, "armed and dangerous with a gun." (Doc. #18, Exh. C). The warning specifically said that defendant and Ms. Green were "victim[s]/person[s] of interest in this case. If contacted, please call Detective R. Hall [redacted]. Waters is a victim in another attempt murder under event 140909-3246. May be in the company of a female named Akiya Green. OFFICER SAFETY!! WATERS MAY HAVE A HANDGUN ON HIS PERSON." (Doc. #22, Exh. 1). Based on that warning, Officer McConnell was on notice that both Ms. Green and the defendant were each victims/persons of interest in two attempt murder cases, events #140930-0644 and 140909-3246 respectively. (*Id.*)

Within ten minutes of pulling defendant and Ms. Green over, Officer McConnell had received this information, identified the car as a felony vehicle, requested back up, and had taken defendant and Ms. Green out of the car and into custody. (Doc. #18, Exhs. A, C). During the course of these events, Officer McConnell's report stated that officers conducted a pat down of Ms. Green and discovered marijuana in her right boot. (Doc. #18, Exh. C). At about 10:00 AM, two units with detectives arrived. They removed defendant's handcuffs and began to question him about the prior incident in his home. (Doc. #18).

At some point during the stop, Officer McConnell states that she smelled marijuana emanating from the vehicle. Detective J. Poulsen's arrest report claims that Officer McConnell smelled the marijuana when she first approached the vehicle and immediately noticed a marijuana cigarette in the ashtray. (Doc. #18, Exh. B). Officer McConnell's report suggests that she did not detect the odor until she approached the vehicle again, and the occupants were taken out of the vehicle. (Doc. #18, Exh. C). Officer McConnell then requested a K-9 unit for a narcotics detection dog to search the vehicle. (*Id.*) The K-9 unit conducted a search and, during the course of that search, the officers opened the hood of the car where they discovered an unregistered 9mm semi-automatic firearm. (Doc. #18, Exh. B). After conducting a records check, which showed that defendant was a

**James C. Mahan
U.S. District Judge**

- 2 -

convicted felon, defendant was placed under arrest. (*Id*.). The entire incident occurred over the course of approximately 3 hours.

## II. Legal Standard

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The general rule is that the Fourth Amendment makes warrantless searches and seizures unreasonable as a matter of law. *See United States v. Cervantes*, 703 F.3d 1135, 1138–39 (9th Cir. 2012) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Traffic stops provide one of the "few specifically established and well-delineated exceptions" to this rule. *Id*.

A police officer may stop a car without a warrant, and thereby seize its passengers, if there is reasonable suspicion that criminal activity may be afoot or probable cause that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (stating that a police officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver). Reasonable suspicion is a low standard; it only requires a police officer to "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). A police officer's "actual motivation" or "[s]ubjective intentions" are not germane to the constitutionality of a stop. *Whren*, 517 U.S. at 813–14.

A police officer may also search a car without a warrant if there is probable cause that the car contains contraband or other evidence of criminal activity. *Carroll v. United States*, 267 U.S. 132, 153– 54 (1925). The warrantless search is limited in scope to compartments and containers in the car that may hold the suspected contraband or evidence. *United States v. Ross*, 456 U.S. 798, 820– 21 (1982). The rationale for this rule is twofold: automobiles can be driven away before a warrant may be obtained and their occupants have a reduced expectation of privacy when traveling openly in public view. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (tracing the history of the automobile exception).

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept." *Id.* at 232. It is "not readily, or even usefully, reduced to a neat set of legal rules." *Id.* Determining whether probable cause exists "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* The concept does not deal with hard certainties, but with probabilities. *Id.* at 241. This means that a police officer's reasonable but mistaken belief regarding the facts establishing probable cause does not offend the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

If a police officer stops a vehicle without reasonable suspicion or searches it without probable cause, then the occupant's Fourth Amendment rights have been violated, see *Florida v. Royer*, 460 U.S. 491, 497–99 (1983), and the exclusionary rule bars the prosecution from introducing evidence against that person that was obtained as a result of the illegal seizure. See *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *Spano v. New York*, 360 U.S. 315, 320–21 (1959). ("[T]he police must obey the law while enforcing the law; [] in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.").

Defendant Waters contends that the court should suppress all evidence seized as a result of the traffic stop that occurred on December 8, 2014. Defendant asserts the officers unlawfully extended his otherwise completed traffic stop, inappropriately handcuffed and questioned him during the

**James C. Mahan**
**U.S. District Judge**

- 4 -

search, and had no reasonable basis to conduct any search be it by hand or with the aid of a K-9 unit.

However, Magistrate Judge Ferenbach recommended that defendant's motion to suppress be denied because 1) there was an objective basis for the stop, 2) the discovery that defendant's car was a felony vehicle, its occupants may have a handgun, and Officer McConnell smelled marijunana provided grounds to expand the search, and 3) the facts presented, in sum total, rendered the officers' conduct reasonable under the Fourth Amendment. In response, defendant filed a number of objections and requested the court to hold a *de novo hearing.*

*a. Circumstances leading to the stop*

Several of defendant's objections assert that Magistrate Judge Ferenbach erred by including unsubstantiated background facts. The court believes that the legal conclusions drawn by Magistrate Judge Ferenbach are correct and affirmed by the essential facts presented. However, the court will address the objections relating to aspects of the factual record in turn.

Defendant first objects to the factual finding that defendant's actions led Officer McConnell to believe the defendant was attempting to flee. In his report and recommendation, Magistrate Judge Ferenbach found that, after Officer McConnell activated her lights, "Mr. Waters drove through the intersection and led McConnell to believe that Mr. Waters was attempting to flee. Mr. Waters drove south on North Lamb Boulevard for approximately five hundred feet before pulling into a Home Depot parking lot." (Doc. #24).

However, defendant points out that this characterization of the facts appears nowhere in the police reports nor the metro communication log ("CAD"), rather, they appear only in the government's response (doc. #22) to defendant's motion to suppress. The CAD log suggests that it took defendant Waters, at most, forty-nine seconds to stop his car after Officer McConnell initiated the stop. (Doc. #18, Exh. A). That is the only substantiated piece of evidence presented to the court. Whether Officer McConnell thought those forty-nine seconds demonstrated an attempt to flee is conjecture; it is not included anywhere in her report and consequently does not form any basis of this court's opinion.

. . .

James C. Mahan
U.S. District Judge

- 5 -

*b. Description of the defendant*

Defendant next asserts that the magistrate judge erred in his finding that defendant "was shaking [and] the scent of marijuana emanated from the car" when officer McConnell first approached. (Doc. #24). Defendant is correct that the allegation that he was visibly shaking is not included in any of the submitted police reports. Officer McConnell's report says only that she "noticed the occupants were acting in a very suspicious manner." (Doc. #18, Exh. C). She also reported that the suspects behaved in a "very 425" manner on the CAD. (Doc. #18, Exh. A).

Furthermore, when Officer McConnell smelled the marijuana is in dispute. Officer McConnell's own report suggests that she did not detect an odor of marijuana until the second time she approached the vehicle, after the occupants had been removed and patted down. *Id.* Detective Paulsen's report states that Officer McConnell smelled the marijuana when she first approached the vehicle. Doc. #18, Exh. B).

*c. Information provided to Officer McConnell*

Defendant's third factual contention focuses on Magistrate Judge Ferenbach's characterization that defendant's car was a "'felony vehicle' and that its occupants were armed and dangerous and wanted in connection with an attempted murder." (Doc. #24). While defendant may find the sentence misleading, its core assertions are factually correct and found in defendant's own attached exhibits.

Within the first ten minutes of the stop, Officer McConnell returned to her patrol car where she read the returns from a scope hit which indicated that this was a felony vehicle (Doc. #18, Exhs. A, C). She also received a report stating that the defendant was a victim in an attempted murder case. (Doc. #22, Exh. 1). That report indicated that if an officer came into contact with defendant, they should call detective Hall. *Id.* It also warned officers that defendant may be armed. *Id.* While this is slightly different from Officer McConnell and Magistrate Judge Ferenbach's description, the facts indicate that Officer McConnell knew she was approaching a felony vehicle with an occupant who could be armed.

. . .

. . .

*d. Denial of the motion without a hearing*

Defendant argues that the discrepancy between the two officers reports regarding the timing of the smell of marijuana creates a material factual dispute as to whether officers had probable cause to search defendant's car in the first instance, thereby entitling Waters to an evidentiary hearing. (Doc. ##25, 39). Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora,* 600 F.2d 1317, 1320 (9th Cir.), *modified on other grounds,* 609 F.2d 433 (1979). An evidentiary hearing on a motion to suppress ordinarily is required only if the court concludes that contested issues of fact going to the validity of the search are at issue. *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir.1979).

If the timing of when Officer McConnell smelled the marijuana was essential in determining whether the officers had probable cause to conduct the search, then the court would need to hold a hearing. As elaborated upon below, the timing is not necessary to find that there was probable cause to expand the scope of the traffic stop, and a hearing to rehash these same arguments is unnecessary.[1]

Defendant's objections also try, for the first time, to cast doubt on whether Officer McConnell actually smelled marijuana coming from the vehicle at all. (Doc. #25). Defendant points to the fact that there is no entry in the CAD report about detecting the smell of marijuana and that the officers reports do not indicate that any marijuana was found in the vehicle. The government correctly points out that the CAD report is not "a live blog" of the events of a traffic stop. (Doc. #28). It is therefore not unreasonable that aspects of the stop were not included. Furthermore, both Officer McConnell and Detective Paulsen report that marijuana was found. Officer McConnell says that Ms. Green was concealing marijuana in her right boot and Detective Paulsen's report states that there was a marijuana cigarette in the ashtray. (Doc. #18, Exhs. B, C). Defendant provides no

---

[1] Defendant's separate motion for a *de novo* hearing (doc. #39) addresses the same concerns as his original motion to suppress and his objections to Magistrate Judge Ferenbach's report and recommendation. Consequently, for the purposes of this order, the analysis is the same for both motions.

**James C. Mahan**
**U.S. District Judge**

- 7 -

evidence to discredit the assertion that Officer McConnell smelled marijuana, and the facts presented, by the defendant himself, suggest that she did.

*e. Probable cause to search the car*

Because of these factual discrepancies, defendant believes Magistrate Judge Ferenbach erred in holding that officer McConnell had probable cause to seize the defendant and search his car. However, the court finds that Magistrate Judge Ferenbach correctly identified the essential facts.

There is no dispute that Officer McConnell stopped the defendant because his vehicle's registration was suspended. (Doc. #24). Defendant does not provide any facts to rebut these reports. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citing *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986)).

Magistrate Judge Ferenbach then proceeded to find that the Officer McConnell had probable cause to expand the search because of the information she received from the scope hit. She also smelled marijuana. (Doc. #24). Defendant objects on two grounds: 1) that the length of time Officer McConnell detained the defendant before receiving the scope hit was longer than a reasonable stop for a suspended registration should take, and 2) the discrepancy in timing regarding when Officer McConnell smelled marijuana. (Doc. #25)

Defendant argues that a stop for a suspended registration "could have easily been effectuated in five minutes or less. Yet, according to the CAD, Officer McConnell did not discover that detectives wanted to speak with Waters . . . until ten minutes after McConnell initiated the stop." (Doc. #25). Consequently, the ten minutes it took Officer McConnell to discover that detectives wanted to speak with defendant in connection with an attempted murder and that he was driving a felony vehicle was prolonged longer than necessary to effectuate the traffic stop. (*Id.*)

Running licenses and registration though a background check is the routine business of every traffic stop. It is unreasonable to propose that there is a meaningful distinction between defendant's arbitrarily suggested five minutes and the actual ten minutes it took for Officer McConnell to run a scope and determine that defendant was driving a felony vehicle and may have a handgun on his person. The Supreme Court's teaching is that "the touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991). Ten minutes is a reasonable amount

James C. Mahan
U.S. District Judge

- 8 -

of time for a *Terry* stop pertaining to a suspended registration. *See, e.g. U.S. v. Turvin,* 517 F.3d 1097, 1102–03 (9th Cir.2008) (While emphasizing that there is no "bright-line" rule, the Ninth Circuit held "that fourteen minutes is not unreasonably long for a traffic stop.")

Once Officer McConnell had knowledge that 1) this was a felony vehicle, 2) detectives wished to speak with defendant who was a victim/person of interest in an attempted murder, and 3) he may have a handgun on his person, she had sufficient reason to prolong and expand the scope of the traffic stop. Defendant relies on *Rodriguez v. United States* to suggest that the lawful traffic stop became unlawful because it was prolonged beyond the time reasonably required to issue the ticket. 135 S. Ct. 1609, 1612 (2015). Magistrate Judge Ferenbach correctly distinguishes this case from *Rodriguez*. (Doc. #24). Like *Rodriguez*, the officer conducted a routine traffic stop, which led to a dog sniff search. Unlike *Rodriguez*, Officer McConnell had grounds to expand the search because of both the facts outlined above as well as the scent of marijuana and the discovery of the marijuana during Ms. Green's pat down.

The fact that Officer McConnell smelled marijuana is undisputed. While defendant's latest objections make the untimely attempt to cast doubt on whether Officer McConnell smelled the marijuana at all, the evidence presented to the court indicates that she did. Therefore, the only issue is whether Officer McConnell, as Detective Paulsen indicates (doc. #18, Exh. B), smelled the marijuana when she first approached the vehicle, when she reported that defendant and Ms. Green were behaving in a suspicious manner (doc #18, Exhs. A, C), or whether she smelled it after the defendant and Ms. Green were removed from the vehicle. (Doc. #18, Exh. C). If she smelled it immediately, then she clearly had probable cause to the extended search of the vehicle. If she smelled it later, she still had probable cause because Officer McConnell already had grounds to extend the stop based on the information she received from the scope hit.

Defendant further objects: "assuming officers genuinely had probable cause to search [the defendant's vehicle] based on the smell of the marijuana and the possibility that Waters had a handgun on his person, such probable cause to search extended only to the passenger compartment of the vehicle." (Doc. #25). The government rightly points out that this directly contradicts Supreme Court and Ninth Circuit precedent. If an officer smells marijuana emanating from inside

James C. Mahan
U.S. District Judge

- 9 -

1 the vehicle, she can search the entire vehicle for evidence of contraband, not just the passenger
2 compartment. *See United States v. Norment*, 13 F. App'x 654, 656 (9th Cir. 2001);
3 *United States v. Laird,* 511 F.2d 1039, 1040 (9th Cir. 1975) (odor of marijuana emanating from
4 car provides requisite probable cause for search); *United States v.* Parker, 919 F. Supp. 2d 1072,
5 1079 (E.D. Cal. 2013)("The odor of marijuana emanating from a vehicle creates sufficient
6 probable cause to justify a warrantless search of the entire vehicle for drugs); *see also United States*
7 *v. Ross*, 456 U.S. 798 (1982) (under the automobile exception to the warrant requirement, officers
8 may search "every part of the vehicle and its contents that may conceal the object of the search.").
9     Despite minor discrepancies, the essential facts demonstrate that the officers' conduct was
10 reasonable under the Fourth Amendment. The search of defendant's car and resulting discovery of
11 the firearm is therefore valid and will not be suppressed.
12     *f. Miranda Warnings*
13     In his motion to suppress, defendant argued that his statements should be suppressed because
14 they were "fruit of the poisonous tree" because they were the "direct result of the illegal search
15 and seizure of the car and firearm." (Doc. #18). As stated above, the search of the car was legal;
16 therefore the statements will not be suppressed as fruit of the poisonous tree.
17     For the first time in his objection to the report and recommendation, defendant argues that his
18 statement should be suppressed because he was provided with incomplete *Miranda* warnings
19 during his second interview. (Doc. #18, Exh. A). While defendant should have raised this in his
20 original or a separate motion to suppress, the court will address the issue now so that the parties
21 may fully move forward in light of this decision.
22     Defendant first argues that he was not provided with *Miranda* warnings during the three hours
23 he was detained and questioned prior to the discovery of the handgun. Defendant provides
24 absolutely no evidence to support this claim; he produces no transcript, nothing to suggest that he
25 was not given *Miranda* warnings, nor any evidence that those conversations are relevant to the
26 single charge in this case.
27     Defendant next asserts that Detective Paulsen gave him incomplete Miranda warnings after he
28 was placed under arrest because 1) Detective Paulsen said that "anything you say *can* be used

**James C. Mahan**
**U.S. District Judge**

- 10 -

against you" rather than it "can and will" be used against defendant; 2) that Detective Paulsen did not tell him he had a right to an attorney before questioning, only *during*; and 3) that defendant had the right to stop questioning at anytime. (Doc. #25, Exh. A)

The Supreme Court does not require that the language of *Miranda* be read verbatim to defendants. *California v. Prysock,* 453 U.S. 355, 359 (1981). The relevant inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda. Duckworth v. Eagan,* 492 U.S. 195 (1989); *Doody v. Schriro*, 596 F.3d 620, 635 (9th Cir.) *cert. granted, judgment vacated sub nom. Ryan v. Doody*, 562 U.S. 956 (2010). Courts are not permitted to apply just the plain language of *Miranda* to the case at hand. Rather, *Miranda* warnings must be examined from a practical viewpoint. *Camacho v. United States,* 407 F.2d 39, 42 n. 2 (9th Cir. 1969).

Rather than focusing on one sentence in isolation, looking to the warning as a whole, the court finds that Detective Paulsen informed the defendant of his rights under *Miranda.* While Detective Paulsen said "can" as opposed to "can and will," the understanding that defendant's statements may be used against him in a court of law is clear. Furthermore, "can" appears to be a common iteration of "can and will" that has survived *Miranda* scrutiny. *See, e.g.*, *United States v. Miguel*, 952 F.2d 285, 287 (9th Cir. 1991) (taking no issue with the use of the word "can" as opposed to "can and will").

Although Detective Paulsen said only that defendant had "the right to the presence of an attorney *during* questioning" in the next sentence he clarified that "[i]f you cannot afford an attorney, one will be appointed to you *before questioning*." (Doc. #25, Exh. A *emphasis added*). *Miranda* requires that the suspect be informed of his right to an attorney and to appointed counsel, and that if the police cannot provide appointed counsel, they will not question him until he waives his right to counsel. *Duckworth v. Eagan*, 492 U.S. 195, 205 (1989).

Although the Detective Paulsen did not specify that defendant's right to counsel applied before and during questioning, several federal courts of appeals have found similar general advisements adequate under *Miranda*. *See, e.g.*, *Thomas v. Lamarque*, 121 F. App'x 220, 222 (9th Cir. 2005); *United States v. Frankson,* 83 F.3d 79, 82 (4th Cir. 1996)*; United States v.*

**James C. Mahan**
**U.S. District Judge**

- 11 -

*Caldwell*, 954 F.2d 496, 502 (8th Cir. 1992); *United States v. Burns*, 684 F.2d 1066, 1074–75 (2d Cir. 1982). Notably, the Ninth Circuit has emphasized the critical importance of the right to know that counsel may be present *during* questioning. *United States v. Noti*, 731 F.2d 610, 614 (9th Cir. 1984). However, it has also upheld warnings that failed to explicitly inform defendants of the right to consult with appointed counsel *prior to* questioning. *See United States v. Noa*, 443 F.2d 144, 146 (9th Cir. 1971)

Furthermore, the right to stop questioning at any time is not an independent right, but rather another means by which to inform the accused of his right to have an attorney present. *Duckworth v. Eagan*, 492 U.S. 195, 205 (1989) (finding that defendant's right to counsel was adequately communicated by the statement that he had the right to "stop answering at any time until [he] talk[ed] to a lawyer."); *Doody v. Schriro*, 596 F.3d 620, 658 (9th Cir.) *cert. granted, judgment vacated sub nom. Ryan v. Doody*, 562 U.S. 956 (2010). The right to stop questioning at any time is a much broader statement than that required by *Miranda*. *United States v. Gillyard*, 726 F.2d 1426, 1429 (9th Cir. 1984).

The precise words of language used in advising a suspect of his rights are not determinative; substance controls form. Based on the warning he was given, defendant would be able to grasp the substance of what he was told—that he had the right to appointed counsel if he could not afford a lawyer and that right exists both before and during questioning.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that, consistent with the foregoing findings, the report and recommendation of Magistrate Cam Ferenbach (doc. #24) be, and the same hereby is, ADOPTED.

IT IS FURTHER ORDERED that defendant Gregory Allen Water's motion to suppress (doc. #18) be, and the same hereby is, DENIED.

. . .

. . .

. . .

**James C. Mahan
U.S. District Judge**

IT IS FURTHER ORDERED that defendant Gregory Allen Water's motion for a *de novo* hearing (doc. #39) be, and the same hereby is, DENIED.

DATED January 26, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**